IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

The ESTATE of TYLER J. MEIER, by
Personal Representative Travis J. Meier,

                Plaintiff,

   v.

EAU CLAIRE COUNTY, CITY OF AUGUSTA,
GORDON O'BRIEN, in his official capacity as
Chief of Police for the City of Augusta,
LEVI M. STUMO, individually and as a police
officer for the City of Augusta, RON D. CRAMER, in
his official capacity as Eau Claire County Sheriff, and
DANIEL T. EATON, individually and as a deputy
sheriff for Eau Claire County,

                Defendants.

OPINION and ORDER

22-cv-102-jdp

---

This case involves a use of force by two police officers that ended with the death of Tyler J. Meier. Meier's estate is suing those officers and their employers for Meier's death and the events leading up to it. Defendants move for judgment on the pleadings. Dkt. 11 and Dkt. 21.

The estate alleges that officers Levi M. Stumo and Daniel T. Eaton responded to a call on a cold night in March 2019 about a naked man (Meier) at a rural farm in or near Augusta, Wisconsin, which is in Eau Claire County.  Dkt. 1, ¶¶ 14–17. Meier was clothed when the officers found him on the road, and he was walking away from a parked car. *Id.*, ¶¶ 18–19. He was acting strangely: "walking erratically," "moving his arms around with force," and "making biblical references." Dkt. 1, ¶¶ 21, 23. The officers followed Meier at a close distance, which "visibly agitated" Meier to the extent that he threw his body onto a snowbank, fell to his knees, pushed his face into the snow, and removed his clothes. *Id.*, ¶¶ 30–47. When Meier moved

toward the officers, Eaton deployed his taser. A struggle ensued after that, resulting in Stumo firing his gun in Meier's chest, killing him. *Id.*, ¶¶ 54–55.

The estate contends that defendants violated the Fourth Amendment by using a taser on Meier and then shooting him, violated the Due Process Clause by putting Meier in a dangerous situation, and violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act by failing to accommodate Meier's mental disabilities. Defendants seek dismissal of the constitutional claims against Stumo and Eaton and the statutory claims against all defendants.

Defendants contend that Stumo and Eaton are entitled to qualified immunity on the constitutional claims because it wasn't clearly established that defendants' actions violated the Constitution and that the complaint doesn't adequately allege that Meier had a disability for the purpose of stating a claim under the ADA or the Rehabilitation Act. The court will deny defendants' motions on the Fourth Amendment claims and statutory claims but grant the motions on the due process claims.

As for the Fourth Amendment claims, the general question is whether the use of force was reasonable, which is informed by several factors, including the severity of the crime at issue, the immediate threat the suspect posed to the safety of the police officers and others, whether the suspect was armed, interfering with the officer's duties, or actively resisting arrest. *Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021). But there are some clear rules. For example, officers may not use a taser "against a nonresisting or passively resisting subject." *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018); *see also Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 732 (7th Cir. 2013). And officers may not use deadly force unless the subject presents an

immediate threat of serious harm to the officers. *Smith*, 10 F.4th at 742–43; *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 484-85 (7th Cir. 2015).

The court of appeals recently stated that granting qualified immunity is rare at the pleading stage "because determinations of qualified immunity most often depend on facts a plaintiff is not required to plead at the outset of litigation to avoid dismissal." *Roldan v. Stroud*, 52 F.4th 335, 337 (7th Cir. 2022). That is the situation here. It is simply too early to determine whether the officers are entitled to qualified immunity.

The estate alleges that Eaton deployed his taser after Meier refused an order to keep his clothes on and began to "move toward" Eaton. Dkt. 1, ¶ 48. Stumo shot Meier after Meier tried to use Stumo's body to help himself stand up, "attempted to get on top of" Eaton," "began to move towards" Stumo and "reached out to make contact" with Stumo. *Id.*, ¶¶ 50– 55. Meier was unarmed, was not suspected of a violent crime, and had not made any threats towards the officers. It isn't clear from the estate's allegations how fast or aggressively Meier was moving or whether the officers had another reason to fear for their safety. Depending on the how the facts develop, plaintiffs may be able to show that the officers violated clearly established law articulated in the cases cited above.[1]

As for the statutory claims, the estate's theory is that the officers knew that Meier was suffering from a mental disability and that they were exacerbating his symptoms by following him so closely and continuing to confront him, so they should have accommodated Meier, such

---

[1] Defendants rely on *DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008 (7th Cir. 2006), and *Siler v. City of Kenosha*, 957 F.3d 751 (7th Cir. 2020), but those cases are distinguishable. *DeLuna*, 447 F.3d at 1011–12, involved force against a suspect "who had a history of violence, and who was known to both carry and sell weapons" and *Siler*, 957 F.3d at 760, involved a suspect who appear to be armed and who "had a reputation for physical violence."

as by maintaining a greater distance, waiting for backup, or seeking input from a mental healthcare provider. This is a novel theory that will be difficult to prove. But defendants' only argument at this stage is that the estate didn't adequately allege that Meier had a disability because he didn't explain how his mental health condition substantially limited a major life activity. The court disagrees.

Both the ADA and the Rehabilitation Act define "disability" in part to mean a physical or mental impairment that substantially limits a major life activity. *See* 42 U.S.C. § 12102(1); *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). But plaintiffs aren't required to plead facts supporting each element. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 517 (7th Cir. 2015); *Christensen v. Cnty. of Boone, IL*, 483 F.3d 454, 465 (7th Cir. 2007). And the court of appeals doesn't require plaintiffs to use specific words in their complaint. *See Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012) (plaintiff stated a claim for a hostile work environment despite never using that phrase in the complaint). The important question is whether the complaint alleges enough facts to support a reasonable inference that the element is satisfied. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint meets that standard. The estate alleges that Meier suffered from an anxiety disorder and that the officers knew that Meier suffered from such a disability and appeared to be experiencing a mental health crisis. *Id.*, ¶¶ 24, 74. It is reasonable to infer from the complaint's allegations about Meier's strange behavior that his condition substantially limited his ability to interact with others, which is identified as a major life activity in federal regulations. *See* 29 C.F.R. § 1630.2(i)(1)(i); *but see Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 656 (7th Cir. 2009) (declining to decide whether interacting with others is a major life activity). Defendants don't respond to the estate's contention that interacting with others is a major life

activity, so the court need not consider that issue, and the court will deny defendants' motion to dismiss the statutory claims.

As for the due process claim, that is foreclosed under circuit precedent. The claim is based on the "state-created danger" doctrine, under which the plaintiff must show three things: (1) the defendants created or increased a risk of danger through their "affirmative acts"; (2) those acts were the proximate cause of the plaintiff's injuries; and (3) the defendants' conduct "shocks the conscience." *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019). The estate's theory for this claim is similar to the statutory claims: the officers knew of a substantial risk that they were increasing the danger to Meier by following him and confronting him even though they knew that doing so was agitating him. This claim fails because the state-created danger doctrine applies only when a state actor's conduct leads to harm inflicted by a private party. *Doxtator v. O'Brien*, 39 F.4th 852, 866 (7th Cir. 2022). It doesn't apply in a situation like this one, involving "harm carried out by public law enforcement officers." *Id.* So the court will dismiss the due process claim against all defendants.

ORDER

IT IS ORDERED that the motions for judgment on the pleadings, Dkt. 11 and Dkt. 21, are GRANTED in part and DENIED in part. The motions are GRANTED as to the due process claim against all defendants, and that claim is DISMISSED. It is DENIED in all other respects.

Entered November 30, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

5